## THE FREDERICK E. IVES.

(Circuit Court of Appeals, Second Circuit. November 14, 1910.)

### No. 48.

TOWAGE (§ 11*)—LOSS OF TOW—LIABILITY.

> A tug which lost her tow by collision with a breakwater while she was attempting to enter the New Haven Harbor in a fog, because of a sudden high wind, *held* not in fault nor liable for the loss.

> [Ed. Note.—For other cases, see Towage, Cent. Dig. §§ 11-23; Dec. Dig. § 11.*]

Appeals from the District Court of the United States for the Southern District of New York.

In Admiralty. On petition of the New England Transportation Company, as owner of the steam tug Frederick E. Ives, for limitation of liability. Decree (169 Fed. 902) granting the petition and dismissing the claims for damages, and claimants appeal. Affirmed.

Carpenter & Park (Samuel Park, of counsel), for appellant Western Assurance Co.

Wilcox & Green (Herbert Green, of counsel), for appellants Thos. J. Howard and others.

James J. Macklin (De Lagnel Berier, of counsel), for appellants Leavy and Cain.

Burlingham, Montgomery & Beecher (Roderick Terry, Jr., and W. S. Montgomery, of counsel), for appellee.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. February 15, 1908, at 2:30 a. m., the tug Frederick E. Ives, with six barges in tow in three tiers of two each, bound from New York to New Haven, came to anchor in dense fog and dead calm, to the west and somewhat to the north of the east end of the West Breakwater, so called because it is the westernmost of the breakwaters constructed off the harbor of New Haven. It runs substantially N. W. and S. E., is in the course of construction, and at the date mentioned had been fully completed for a distance of about three-eighths of a mile. At a point nearly half a mile N. E. from the east end of this breakwater and about at right angles with it, begins the Luddington Rock Breakwater, running substantially N. E. and S. W., and five-eighths of a mile N. E. from the east end of it begins the East Breakwater, running substantially N. E. and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

S. W. The tow could have got into a protected place either by going around the west end of the West Breakwater, or between the West Breakwater and Luddington Rock Breakwater, or between Luddington Rock Breakwater and the East Breakwater. There was a siren inside the east end of the West Breakwater blown automatically by a steam engine, but the mouth of the horn had been turned down below the level of the breakwater, and the engine power had been reduced from 13 to 3 horse power, apparently for the comfort of the shore residents, so that it was practically useless to navigators. The master of the tug was well aware of this.

At about 4 a. m. the wind breezed up strong from the S. W., and the master, being of opinion that the safety of the tow required him to seek a refuge, weighed anchor, the tow then heading S. S. W., and steered around by the south to an E. N. E. course for the purpose of picking up the sound of the siren at the West Breakwater and then working in behind it. He did not hear the siren until the tug was within about 100 feet of the breakwater, with the tow tailing out some 700 or 800 feet behind and the wind on its starboard side. Although he ported at once, he could not pull the tow clear on account of the wind. The foremost tier struck the breakwater, the tow stranded and eventually became a total loss.

The district judge found that the stranding resulted from the sudden increase of wind, the necessity of seeking a harbor and the want of any proper signal from the West Breakwater.

The claimants argue that the proofs show the passage which the master sought is not used in foggy weather, and that, as he knew, the siren was substantially useless, and the wind blowing what sound it did make away from him, he ought not to have tried to enter that passage. Some of them say that he should have gone around the west end of the West Breakwater, and others that he should have gone by the main entrance between Luddington Rock Breakwater and the East Breakwater, where the passage is wider and there is a better, though not a very good, siren. We adopt the finding of the district judge that the master was justified in seeking a harbor because the petition alleged, and the petitioner's witnesses testified, and the answer of the claimants admitted, that the wind blew up strong from the N. W. before the tow moved from its anchorage and because what the tow did was natural in such a situation. We think it was a matter of judgment for the master to determine which approach he should select, in view of the conditions which he saw as well as those which he foresaw. For an error of judgment upon this point the owner would not be liable. The speed of the tow was not specified as a fault, and, at all events, had nothing to do with the disaster. The siren would not have been sooner heard whether the tow was moved at four miles or two miles an hour, and at either speed the tug would have been quite unable to pull the tow away from the breakwater when it had got so close. Indeed, the faster she was going the more likely she would be to succeed. It has occurred to us that it would have been prudent for him to have approached the breakwater on a more northerly course, so that if the tug got very

near it the tow would have been to the south and east with the wind on the port side and in no danger of stranding. But, as this was not suggested by any of the nautical witnesses nor by any of the counsel for claimants, we suppose these competent judges did not consider it a fault.

Decree affirmed, with costs.